# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL MACKEY, | ) 1:12 -CV - 00116 LJO - JLT |
| Plaintiff, | ) |
| v. | ) ORDER DENYING DEFENDANTS' MOTION |
| | ) TO COMPEL MEDICAL EXAMINATION |
| FRAZIER PARK PUBLIC UTILITY DISTRICT, et al., | ) (Doc. 28) |
| Defendants. | ) |

The parties appeared before this Court on Defendants' motion to compel the mental examination of the Plaintiff, Cheryl Mackey, pursuant to Federal Rules of Civil Procedure, Rule 35(a). Randy Rumph appeared on behalf of Plaintiff. Jeremy M. Dwork appeared for Defendants.

Defendants contend that given the allegations in Plaintiff's complaint, Plaintiff's on-going complaints of emotional distress, and the personal tragedies which occurred prior to Plaintiff's allegations of mistreatment in her workplace, Plaintiff has placed her mental status at issue and good cause for the exam exists. Plaintiff contends that the exam is not necessary, as the expert designated by Plaintiff was mandated and chosen by Defendants and Defendants have not shown why the medical records and discovery obtained thus far are insufficient. For the reasons set forth below, Defendants' motion is **DENIED**.

/////

## I. Factual Background

In this action, Plaintiff is suing her former employer, the Frazier Park Public Utility District (referred to herein as "the District"). Plaintiff's Complaint alleges six causes of action: four under the Fair Employment and Housing Act for hostile work environment, constructive termination, retaliatory constructive termination and retaliatory hostile work environment and two against Defendant Keenberg for hostile work environment and constructive termination under 42 U.S.C. § 1983. Plaintiff's Third and Fifth causes of action allege she has suffered damages including "emotional distress, and mental anguish." (Doc. 1 at 6 and 7). Plaintiff prays for relief including damages for "emotional distress and mental anguish." (Doc. 28-4 at 9).

Plaintiff was employed with the District's field crew for approximately four years. In April 2010, Plaintiff's daughter was murdered. (Doc. 28-4 at 4). Around that same time, her father was imprisoned for possession a weapon. (Doc. 28-4 at 23). Shortly after these events, the District suggested that Plaintiff attend counseling to help cope with the events that had occurred in her personal life.

In May 2010, the District contacted Sarah Edwards, LCSW, Ph.D., to discuss setting up an appointment with Plaintiff "in the face of the tragic death of [Plaintiff's] daughter." (Doc. 29-3 at 2). Plaintiff agreed to attend the counseling and that a brief leave of absence from work was appropriate. (Doc. 29-11). In July 2010, Dr. Edwards cleared Plaintiff to return to work. (Doc. 29-3).

Plaintiff alleges that when she returned to work after her two-month leave of absence, the workplace harassment and discrimination worsened. In November 2010, Plaintiff resigned from her employment with the District. According to Dr. Edwards, Plaintiff continued to see her to "deal with [the] stress [at work]." (Doc. 29-3 at 2). After Plaintiff left the District, she also saw other mental health professionals including: Dr. Charles Allen, Ph.D. (QME) and Greg Hirokawa, Ph.D.[1] Defendants have obtained the medical records from each of these providers and have deposed Dr. Edwards. Plaintiff has designated Dr. Edwards as her expert.

---

[1] Plaintiff has also been treated for "stress" at Clinica Sierra Vista and by Dr. Sorenson. However, based upon the information provided to this Court, no psychological testing appears to have been performed by those providers.

2

Defendants seek to have Plaintiff undergo a psychiatric examination by Dr. Hochman, a psychiatrist certified by the Board of Psychiatry and Neurology, at his office located at 9911 West Pico Boulevard, Suite 660, Los Angeles, CA. The examination will take approximately 4-6 hours. Defendants have requested that Plaintiff appear for the mental examination prior to October 20, 2012. The examination would be limited to Plaintiff's alleged emotional and mental injuries and the extent and cause of such injuries, Plaintiff's mental state at the time of the alleged mistreatment by Defendants and the evaluation process described by Dr. Hochman. (Doc. 28-3 at 36-37).

## II. Legal Standard

Rule 35(a) sets forth the requirements needed to obtain an order compelling a mental examination. It states the following:

1. The court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

2. The order:
   **(A)** may be made only on motion for good cause and on notice to all parties and the person to be examined; and
   **(B)** must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. Rules Civ.Proc., rule 35, 28 U.S.C.A. The moving party bears the burden of establishing the "in controversy" and "good cause" requirements. Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). Thus, Defendants need to establish that Plaintiff's mental state is at issue and that good cause exists for the exam.

In general, a party's mental condition is in controversy when the case involves a claim for emotional distress and where there is an allegation of a specific mental or psychiatric injury or disorder, a claim of unusually severe emotional distress, the plaintiff offers expert testimony to support the claim of emotional distress, or where the plaintiff has conceded that a mental condition is in controversy. *See* Turner v. Imperial Stores, 161 F.R.D. 89, 97 (S.D.Cal.1995); Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 608 (C.D.Cal.1995). Here, there is no dispute that Plaintiff's mental condition is "in controversy." Indeed, the complaint, the disclosures, the expert

3

disclosures, and Plaintiff's failure to assert the contrary make clear that Plaintiff's mental condition is in issue. Therefore, the issue before this Court is whether good cause for the mental examination exists.

### III. Good Cause

"Good cause" generally requires a showing of specific facts justifying the exam. The Court is to evaluate, for example, whether the information may be obtained through other means, whether the plaintiff plans to prove her claim through testimony of expert witnesses, whether the result of the examination would yield information that is relevant and whether plaintiff claims ongoing emotional distress. *See* Turner*,* 161 F.R.D. at 97–98 (expert testimony); Ragge*,* 165 F.R.D. at 608 (ongoing emotional distress); Schlagenhauf*,* 379 U.S. at 118–119 (information otherwise available).

Defendants assert that its "need to examine Mackey is undeniable." (Doc. 28-1 at 7). Defendants base their need to examine Plaintiff on the fact that Plaintiff has placed her mental health at issue, that she contends her emotion stress is on-going, and that Dr. Hochman's evaluation of Plaintiff will lead to the discovery of relevant information. (Doc. 28-1 at 6-7 (citing Ragge*,* 165 F.R.D. at 609).

Clearly, Plaintiff intends to present expert testimony related to the ongoing emotional damage claim. Likewise, she intends to prove her claim of ongoing emotional distress through the presentation of expert testimony. Additionally, there is no dispute that the results of the proposed exam would be relevant. However, Plaintiff contends that there is not good cause for the examination because Defendants were the ones who selected Dr. Edwards and Defendants have not demonstrated why the medical records and discovery obtained by Defendants is insufficient to prepare a defense. (Doc. 29 at 3).

The Court is not persuaded by Plaintiff's argument that Defendants cannot demonstrate good cause for the examination because Defendants chose Dr. Edwards initially. According to Dr. Edwards, Defendants arranged for Plaintiff to see her in May 2010 "in the face of the tragic death of [Plaintiff's] daughter." (Doc. 29-3 at 2). Dr. Edwards was not retained by Defendants to form an opinion as to the extent any discriminatory practices at work were effecting Plaintiff's mental

4

health. Rather, Dr. Edwards was contacted to assist Plaintiff through a traumatic and emotional event. Once Dr. Edwards believed Plaintiff was emotionally capable of returning to work, Dr. Edwards contacted the District. Though the jury may find that Defendants' confidence in Dr. Edwards is a factor to consider when evaluating her evidence, the mere fact that they recommended her to Plaintiff does not preclude them from marshaling evidence to use in their defense.

On the other hand, Defendants expend little effort on addressing whether the evidence sought is otherwise available.[2] Notably, Plaintiff has undergone already a seemingly comprehensive evaluation by psychiatrist Charles Allen. (Doc. 28-4 at 23-37). This examination included objective testing in addition to records and an interview of Plaintiff. Id. Likewise, Plaintiff underwent an evaluation by clinical psychologist, Greg Hirokawa. (28-4 at 19-21) This evaluation consisted of objective testing, an interview of Plaintiff and records review. Id. Despite this, Defendants fail to present any evidence why an additional evaluation is needed or how this additional evaluation would contribute to the understanding of Plaintiff's situation. Between Dr. Allen and Dr. Hirokawa, Plaintiff has undergone the following tests: MCMI-III (twice), Stressful Life Events Screening Questionnaire, BDI 2, BAI, BHI-2, and the PTSD Symptom Scale.

Despite that Defendants have received these records, they have not attempted to demonstrate why the testing performed by Drs. Allen and Hirokawa is not sufficient or why Dr. Hochman needs to conduct the tests he proposes in order to render his opinion. Rather than producing an explanatory declaration from Dr. Hochman, Defendants provided a generic letter from Laini Wolfson, M.S., Psy. T, of Dr. Hochman's office. (Doc. 28-3 at 36-37). The letter lists eight different tests involved in Dr. Hochman's regular "evaluation process" (Doc. 28-3 at 36-37) but fails to even note the prior examinations undergone by Plaintiff or differentiate these tests from those conducted earlier.[3]

As a result, the Court fines Defendants have not met their burden of showing that the

---

[2] At the hearing, counsel reported his understanding that Plaintiff had undergone or would undergo a total of four psychiatric examinations in connection with her workers compensation case.

[3] Indeed, at least one of the listed tests in Ms. Wolfson's letter was conducted already by Dr. Allen. (Doc. 28-4 at 23 and 32; *see also* the list of test performed by Dr. Hirokawa (Doc. 29-8 at 6)).

information they seek is not otherwise available and, therefore, they have failed to demonstrate good cause.

**ORDER**

Based upon the foregoing, the Court **ORDERS:**

1. The motion for the mental health examination is **DENIED**.

IT IS SO ORDERED.

Dated:   **October 5, 2012**              **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE