1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7

8 CHERYL MACKEY,                                         1:12-CV-00116-LJO-JLT

9             Plaintiff,                              **ORDER ON MOTION FOR**
                                                     **RECONSIDERATION** (Doc. 33)
10      v.

11 FRAZIER PARK PUBLIC UTILITY DISTRICT,
   et al.,
12

13             Defendants.

14                                **INTRODUCTION**

15        Defendants Frazier Park Public Utility District and Greg Keenberg seek reconsideration of the

16 Order (Doc. 31) denying Defendants' motion to compel a Fed. R. Civ. P. 35 medical examination of

17 plaintiff Cheryl Mackey on the grounds that the Order is "clearly erroneous or contrary to law." Ms.

18 Mackey did not file a timely opposition. For the reasons discussed below, this Court DENIES the

19 Request for Reconsideration.

20                                **BACKGROUND**

21 **A.      Facts**

22        In this action, Ms. Mackey brings California state law claims against her former employer, the

23 Frazier Park Public Utility District ("FPPUD") and federal claims against her former supervisor Greg

24 Keenberg ("Mr. Keenberg"). The complaint alleges six causes of action: four against FPPUD under

25 California's Fair Employment and Housing Act for hostile work environment, constructive

26 termination, retaliatory constructive termination and retaliatory hostile work environment, and two

27 against Mr. Keenberg under 42 U.S.C. § 1983 for hostile work environment and constructive

28 termination. Five of Ms. Mackey's six causes of action allege that she has suffered damages including

1

1  "emotional distress and mental anguish." (Doc. 1 ¶¶ 19, 24, 29, 40, 45). She seeks judgment against

2  Defendants for "emotional distress and mental anguish damages to be determined at trial." (Doc. 1 at

3  8).

4         Ms. Mackey was employed with FPPUD's field crew for approximately four years. In April

5  2010, Ms. Mackey's daughter was murdered. (Doc. 28-3 at 4). Around that same time, her father was

6  imprisoned for possession a weapon. (Doc. 28-3 at 23). Shortly after these events, FPPUD suggested

7  that Ms. Mackey attend counseling to help cope with the events that had occurred in her personal life.

8         In May 2010, FPPUD contacted Sarah Edwards, LCSW, Ph.D., to discuss setting up an

9  appointment with Ms. Mackey "in the face of the tragic death of [Ms. Mackey's] daughter." (Doc. 29-

10  3 at 2). Ms. Mackey agreed to attend the counseling and that a brief leave of absence from work was

11  appropriate. (Doc. 29-11). In July 2010, Dr. Edwards cleared Ms. Mackey to return to work and Ms.

12  Mackey did so. (Doc. 29-3).

13         Ms. Mackey alleges that when she returned to work after her two-month leave of absence, the

14  workplace harassment and discrimination worsened. In November 2010, Ms. Mackey resigned from

15  her employment with FPPUD. According to Dr. Edwards, Ms. Mackey continued to see her to "deal

16  with [the] stress [at work]." (Doc. 29-3 at 2). After Ms. Mackey left FPPUD, she was also seen by

17  other mental health professionals including Dr. Charles Allen, Ph.D. (QME) and Greg Hirokawa,

18  Ph.D. Defendants have obtained the medical records from each of these providers and have deposed

19  Dr. Edwards. Ms. Mackey has designated Dr. Edwards as her expert.

20         Defendants sought to have Ms. Mackey undergo a psychiatric examination by Dr. John

21  Hochman, M.D., a psychiatrist certified by the Board of Psychiatry and Neurology. The examination

22  would be limited to Ms. Mackey's alleged emotional and mental injuries and the extent and cause of

23  such injuries, Ms. Mackey's mental state at the time of the alleged mistreatment by Defendants, and

24  the evaluation process used by Dr. Hochman. (Doc. 28-3 at 36-37).

25  **B.**    **Procedural History**

26         Defendants filed a motion to compel a Fed. R. Civ. P. 35 mental examination of Ms. Mackey

27  on September 24, 2012, and Ms. Mackey filed a timely opposition on October 1, 2012. (Doc. 28, 29).

28  Oral arguments on the motion were held October 5, 2012 before Magistrate Judge Jennifer L.

1    Thurston.  (Doc. 34).  Magistrate Judge Thurston entered an Order denying Defendants' motion on

2    October 5, 2012, and Defendants filed this motion for reconsideration on October 15, 2012 (Doc. 31,

3    33).  Ms. Mackey did not file a timely opposition.  Having considered the parties' arguments and the

4    relevant law, this Court issues this order.

5                   **DISCUSSION**

6                **Motion for Reconsideration**

7    **A.**      **Legal Standard**

8        A district court may refer pretrial issues to a magistrate judge under 28 U.S.C. § 636 (b)(1).

9    *See*, *Bhan v.NME Hosp.*, Inc., 929 F.2d 1404, 1414 (9th Cir. 1991).  If a party objects to a non-

10    dispositive pretrial ruling by a magistrate judge, the district court will review or reconsider the ruling

11    under the "clearly erroneous or contrary to law" standard.  Fed. R. Civ. P. 72(a); *Osband v. Woodford*,

12    290 F.3d 1036, 1041 (9th Cir. 2002); *Grimes v. City of San Francisco*, 951 F.2d 236, 240-41 (9th Cir.

13    1991).  A magistrate judge's factual findings are "clearly erroneous" when the district court is left with

14    the definite and firm conviction that a mistake has been committed.  *Security Farms v. International*

15    *Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997); *Green v. Baca*, 219 F.R.D. 485, 489 (C.D. Cal.

16    2003).  However, the district court "may not simply substitute its judgment for that of the deciding

17    court."  *Grimes*, 951 F.2d at 241.  The "contrary to law" standard allows independent, plenary review

18    of purely legal determinations by the magistrate judge.  *See*, *Haines v. Liggett Group, Inc.*, 975 F.2d

19    81, 91 (3rd Cir.1992); *Green*, 219 F.R.D. at 489; *see also*, *Osband*, 290 F.3d at 1041.  "An order is

20    contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.*"*

21    *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008); *Surles v. Air*

22    *France*, 210 F.Supp.2d 501, 502 (S.D. N.Y. 2001); *see*, *Adolph Coors Co. v. Wallace*, 570 F.Supp.

23    202, 205 (N.D. Cal. 1983).  A magistrate judge's pre-trial discovery orders are generally considered

24    nondispositive orders.  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

25        With this standard in mind, this Court turns to FPPUD's challenge to Magistrate Judge

26    Thurston's Order.

27    **B.**      **Good Cause**

28        The Ordering denying Defendants' motion to compel found that Defendants failed to meet

1    their burden of establishing the "good cause" prong of Fed. R. Civ. P. 35(a)'s requirements for

2    obtaining an order compelling a mental examination.

3            The requirements to obtain an order stated in Fed. R. Civ. P. 35(a) are as follows:

4    1.    The court where the action is pending may order a party whose mental or physical condition-

5          -including blood group--is in controversy to submit to a physical or mental examination by a

6          suitably licensed or certified examiner. The court has the same authority to order a party to

7          produce for examination a person who is in its custody or under its legal control.

8    2.    The order:

9          (A) may be made only on motion for good cause and on notice to all parties and the person

10         to be examined; and

11         (B) must specify the time, place, manner, conditions, and scope of the examination, as well

12         as the person or persons who will perform it.

13           Fed. R. Civ. P. 35, 28 U.S.C.A.  The moving party bears the burden of establishing the "in

14   controversy" and "good cause" requirements.  *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct.

15   234, 13 L.Ed.2d 152 (1964).  Defendants had the burden of establishing that Plaintiff's mental state is

16   at issue and that good cause exists for the exam.  The Order found that Defendants failed in the latter,

17   and Defendants now challenge that finding in this motion for reconsideration.

18           Defendants' arguments that they have shown good cause are unavailing and contrary to

19   governing law.  The Supreme Court laid out the construction of Fed. R. Civ. P. 35 in *Schlagenhauf*,

20   and Defendants cite to it as one of their two authorities in their motion for reconsideration.  (Doc. 33).

21   *Schlagenhauf* specifically discusses "good cause" as an additional requirement to "in controversy," and

22   finds that the "good-cause requirement is not a mere formality, but is a plainly expressed limitation on

23   the use" of Fed. R. Civ. P. 35.  379 U.S. at 117-18.  Further, the Supreme Court adopts the Fourth

24   Circuit's statements that, "[t]he specific requirement of good cause would be meaningless if good

25   cause could be sufficiently established by merely showing that the desired materials are relevant," and

26   that, "by adding the words 'good cause,' the Rules indicate there must be greater showing of need

27   under Rules 34 and 35 than under the other discovery rules."  *Id*. at 118 citing *Guilford National Bank*

28   *of Greensboro v. Southern Ry. Co*., 297 F.2d 921, 924 (4th Cir. 1962) (Sobeloff, C.J.).  However,

4

1    Defendants' interpretation of the "good cause" requirement effectively subsumes it into the "in

2    controversy" requirement and relegates it to a mere formality in direct contravention of *Schlagenhauf*.

3    (Doc. 33).   Defendants argue that, "[g]ood cause was demonstrated by plaintiff's claims of serious

4    mental injury as well as by the evidence of extensive psychological treatment contemporaneous with,

5    and following, the alleged workplace mistreatment." (Doc. 33 at 2).   They further contend that, "good

6    cause was demonstrated as a matter of law upon a showing that plaintiff placed her mental state at

7    issue, and when substantial evidence of mental injuries and treatment were introduced through

8    evidence." *Id.*   According to Defendants, if a plaintiff's mental injury is "in controversy," the "good

9    cause" requirement would be met whenever the plaintiff receives treatment for that injury and submits

10    evidence as to the injury or treatment.   This impermissibly reduces the standard to a "mere[] showing

11    that the desired materials are relevant" and makes the good cause requirement "meaningless."  379

12    U.S. at 118.   In fact, this Court finds it difficult to imagine a case where the plaintiff's mental injury is

13    "in controversy" but the plaintiff does not submit evidence of the injury or the treatment received.   The

14    interpretation of Fed. R. Civ. P. 35 Defendants advocate is precisely what the Supreme Court rejected

15    in *Schlagenhauf*, and the Order did not err in finding that Defendants failed to show good cause.  379

16    U.S. at 117-18.

17          Defendants also argue that the Order erred by denying their motion to compel for failing to

18    address whether the evidence sought is available through other means, how the record of Ms.

19    Mackey's prior mental examinations is insufficient, or why Dr. Hochman needs to perform his

20    proposed tests to render his opinion.   A Fed. R. Civ. P. 35 medical examination "require[s] an

21    affirmative showing by the movant that . . . good cause exists for ordering each particular exam," and

22    "[t]he ability of the movant to obtain the desired information by other means is also relevant." 379 U.S.

23    at 118.   Here, Ms. Mackey has already undergone comprehensive evaluations, including objective

24    tests, personal interviews, and review of records, with psychiatrist Charles Allen and clinical

25    psychologist Greg Hirokawa.[1]   (Doc. 28-4).   Defendants have obtained medical records from each of

26    these providers.   Defendants have also deposed Dr. Edwards, whom Ms. Mackey designated as her

27        [1] Ms. Mackey has already undergone the following tests:  MCMI-III (twice), Stressful Life Events Screening Questionnaire,
BDI 2, BHI-2, and the PTSD Symptom Scale.  Defendants stated their understanding at the hearing that Ms. Mackey had

28    undergone or would undergo a total of four psychiatric examinations in connection with her workers compensation case.

5

1  expert.   As the Order notes, Defendants had failed to present any evidence why an additional

2  evaluation is needed or how this additional evaluation would contribute to the understanding of Ms.

3  Mackey's condition.   Defendants only provided a form letter from Dr. Hochman's office listing the

4  tests that are part of his regular "evaluation process."  (Doc. 28-3).   The letter fails to address this

5  particular case or even to note the examinations Ms. Mackey has already undergone.[2]  In their motion

6  for reconsideration, Defendants provide no additional explanation or evidence to cure these

7  deficiencies.   Instead, Defendants simply argue that the availability of the information through other

8  means should not be dispositive in this case.  (Doc. 33).   However, because Defendants continue to

9  provide no explanation and no evidence to as to why this additional testing is necessary or why the

10  existing medical record is insufficient, Defendants give the Court nothing to consider but the extensive

11  records already available to and obtained by Defendants.   Therefore, the Order is not "clearly

12  erroneous or contrary to law" in its denial of Defendants' motion to compel due to Defendants' failure

13  to address these issues.

### CONCLUSION AND ORDER

15       For the reasons discussed above, this Court DENIES Defendants Frazier Park Public Utility

16  District and Greg Keenberg's motion for reconsideration, but permits Defendants to renew their

17  motion to compel before Magistrate Judge Thurston if Defendants are able cure the deficiencies.

20  IT IS SO ORDERED.

21    Dated:   **October 25, 2012**              **/s/ Lawrence J. O'Neill**
22                                    UNITED STATES DISTRICT JUDGE

---

28  [2] As the Order notes, at least one of the tests listed in the form letter from Dr. Hochman's office has already been conducted by Dr. Allen.

6